Craig Sanders (Cal Bar 284397)
    csanders@sanderslaw.group
Jacqueline Mandel (Cal Bar 317119)
    jmandel@sanderslaw.group
**SANDERS LAW GROUP**
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Telephone: (516) 203-7600

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Clarice Eboni Boykin-Patterson,<br><br>Plaintiff,<br><br>v.<br><br>MRC II Distribution Company L.P., JuVee Productions LLC, Mad Chancem Inc.,<br><br>Defendants. | Case No:<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMAND |

Plaintiff Clarice Eboni Boykin-Patterson ("*Plaintiff*"), by and through her undersigned counsel, for her Complaint against defendant MRC II Distribution Company, L.P. ("*MRC*"), JuVee Productions LLC ("*JuVee*") and Mad Chance, Inc. ("*Defendants*") states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*.

2. Plaintiff created an original screenplay titled "Election Night" (the

"*Screenplay*").

3. Defendants produced a commercial feature length film titled "G20" (the "*Movie*").

4. Defendants had substantial access to the Screenplay prior to its creation of the Movie.

5. Defendants, without permission or authorization from Plaintiff, actively copied and/or incorporated the Screenplay into the Movie and engaged in this misconduct knowingly and in violation of the United States copyright laws.

## PARTIES

6. Plaintiff Clarice Eboni Boykin-Patterson is an individual who is a citizen of the State of Arizona.

7. Upon information and belief, Defendant MRC II Distribution Company, L.P. is a California limited partnership with a principal place of business at 9601 Wilshire Boulevard, Beverly Hills in Los Angeles County, California.

8. Upon information and belief, Defendant JuVee Productions, LLC is a California limited liability company with a principal place of business at 10153 ½ Riverside Drive #433, Toluca Lake, California in Los Angeles County, California.

9. Upon information and belief, Defendant Mad Chance, Inc. is a California corporation with a principal place of business at 9100 Wilshire Boulevard, 1000W, Beverly Hills, California in Los Angeles County, California.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

11. This Court has personal jurisdiction over Defendants because they all maintain principal places of business in California.

12. Venue is proper under 28 U.S.C. §1391(b)(2) because Defendants do business in this Judicial District and/or because a substantial part of the events or

2
PLAINTIFF'S COMPLAINT

omissions giving rise to the claim occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

A.     **Plaintiff's Copyright Ownership**

13.     Plaintiff is a professional reporter by trade who writes screenplays and is the legal and rightful owner of certain screen compositions and feature length movie scripts which Plaintiff commercially licenses.

14.     Plaintiff has invested significant time and money in building Plaintiff's reputation as a screenwriter as well as a considerable effort in creating original works for incorporation into feature length films.

15.     Plaintiff's screenplays and scripts are original, creative works in which Plaintiff owns protectable copyright interests.

16.     The Screenplay was first published on January 30, 2021 when Plaintiff submitted it to the ScreenCraft Screenwriting Fellowship contest. The Screenplay was a quarterfinalist in the competition.

17.     The Screenplay was also submitted to Launch Pad Feature Competition on May 28, 2021. The Screenplay made it to the second round in the competition.

18.     The Screenplay was submitted to the Atlanta Film Festival Screenplay Competition on May 28, 2021.

19.     The Screenplay was submitted to the First Look Project competition on May 21, 2021.

20.     The Screenplay was submitted to the TSL Free Screenplay Contest on May 30, 2021.

21.     The Screenplay was submitted to the MACRO x The Black List Feature Screenwriter Incubator contest. The Screenplay made it to the second round.

22.     The Screenplay was submitted to the Fresh Blood Selects competition on August 1, 2022.

23.     The Screenplay was submitted to the Big Break contest on August 1,

2022. The Screenplay was a quarterfinalist.

24. Plaintiff also provided the Screenplay to Cinestate and Exit 44 for potential options to produce the Screenplay.

25. The Screenplay has also been available on Coverfly.com since January 2021. Any subscriber to Coverfly.com could request and/or download a copy of the Screenplay.

26. The Screenplay is listed as the top eight percent of discoverable projects on Coverfly. See [Election Night by Eboni Boykin - Coverfly](Election Night by Eboni Boykin - Coverfly).

27. Plaintiff, in attempting to market and submitting the Screenplay for various contests, began the process of what is colloquially deemed in the entertainment business as "shopping" it around to various film production entities.

28. On May 12, 2025, the Screenplay was registered by the USCO under Registration No. PA 2-536-085.

B. **Defendants' Infringing Activity**

29. Defendants are film and television production companies.

30. In partnership with Defendants, the Movie was distributed by Amazon MGM Studios and was released worldwide on Amazone Prime Video on April 10, 2025.

31. The Movie has been nominated for best television movie and best-case ensemble in a limited series or TV Movie by the Astra TV Awards, best actress in an Action Series, Limited Series or Made-for-TV Movie by the Critics' Choice Super Awards, and outstanding lead performance in a TV movie/limited series by the Black Reel TV Awards.

32. The Movie has approximately received over fifty million worldwide viewers since its release.

33. The Movie is among Amazon MGM Studios' top ten most watched action films of all time on the Amazon Prime streaming service.

34. The Movie secured the number one position on Nielson's movie chart during its debut week with five hundred and six million minutes streamed.

35. Upon information and belief, Defendant has been substantially compensated as a result of their production of the Movie, including but not limited to, payment by Amazon MGM Studios for use and/or licensing of the Movie screenplay and any and all applicable production costs associated with the production of the Movie.

36. Upon information and belief, the option for the Movie began in November 2022.

37. Upon information and belief, the screenplay for the Movie was written by Caitlin Parrish, Erica Weiss, Logan Miller and Noah Miller; however, the story was written by Logan Miller and Noah Miller.

38. Upon information and belief, Noah Miller and Logan Miller are prominent screenwriters in the movie industry and have written the screenplay for Touching Home, Sweetwater and White Boy Rick and were consultants on Sinners.

39. Upon information and belief, Noah Miller and Logan Miller were managed by Daniel Sherman at the time the Movie was produced.

40. Upon information and belief, Daniel Sherman was an executive producer of the Movie.

41. Upon information and belief, Daniel Sherman has a long standing relationship (since at least 2013) with Launch Pad and has been a judge in their screenplay competitions similar to the competitions the Screenplay was entered into. He has also signed multiple Launch Pad Alumni.

42. Upon information and belief, Daniel Sherman is also an active member on Coverfly.com.

43. Without permission or authorization from Plaintiff, Defendants volitionally selected, copied and by extension, displayed via incorporation into the

Movie, Plaintiff's copyrighted protected Screenplay.

44. Upon information and belief, Defendants were aware of facts or circumstances from which the determination regarding the Infringement was apparent. Defendants cannot claim that they were not aware of the infringing activities, including the specific Infringement which forms the basis of this complaint, since such a claim would amount to only willful blindness to the Infringement on the part of Defendants.

45. Upon information and belief, Defendants engaged in the Infringement knowingly and in violation of applicable United States Copyright Laws.

46. Upon information and belief, Defendants have the legal right and ability to control and limit the infringing activities on its film productions and exercised and/or had the right and ability to exercise such right.

47. Upon information and belief, Defendants have received a financial benefit directly attributable to the Infringement.

48. Upon information and belief, Defendants were financially compensated for their participation in the production of the Movie.

49. Upon information and belief, a large number of people have viewed the Movie.

50. Upon information and belief, Defendants at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

51. Defendants' use of the Screenplay has crippled if not destroyed any market for Plaintiff to financially benefit from her own work.

52. As a result of Defendants' misconduct, Plaintiff has been substantially harmed.

53. Defendants have, knowingly and unknowingly, made irrelevant the expensive effort Plaintiff undertook to realize production of the Screenplay. By impermissibly copying and incorporating the Screenplay into the Movie, Plaintiff's

attempts to seek alternative production for a film based on the Screenplay have been rendered moot.

**C.     Comparative Analysis of the Screenplay and Movie**

54.     The Movie is substantially similar to the Screenplay and includes protectable elements that are inclusive but not limited to "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Carlini v. Paramount Pictures Corp.*, 2021 WL 911684, at *9 (C.D. Cal. Feb. 2, 2021).

55.      Plaintiff undertook a substantive comparative analysis of the Screenplay and the Movie which delineated not only consistent similarities but a story progression whereby the sequence of events parallel one another severely.

56.     Both the Movie and Screenplay each share a substantial similarity in, *inter alia*, plot, theme, sequence of events, and character development. A copy of the comparative analysis of the Screenplay and Movie is attached hereto as Exhibit 1.

57.     The plot is virtually synonymous between the Screenplay and Movie. Both feature a black female politician with an extensive military background (including a training with weapons) that must save an auditorium of people, including her own family, when armed Caucasian men, led by one man who despises her, takes over the event and locks everyone in the auditorium. The armed men terrorize the people while remaining focused on capturing the black female politician. She evades the armed men and in the end, her husband is kidnapped and used as a pawn to get her to acquiesce to them.

58.     In the beginning of both the Screenplay and the Movie, the protagonists are introduced as high-ranking black women in public service who are both powerful, imposing figures.

59.     The protagonists in both the Screenplay and the Movie are deemed "bossy" or "bulldozers" and carry themselves with an outsized confidence.

60. In both the Screenplay and the Movie, the protagonists enter an arena that is disguised as a pace for diplomacy or homecoming but in reality, the arena contains dangers and resistance to their political ambitions.

61. The protagonists are on alert early on in the Screenplay and Movie. In the Screenplay, the protagonist is on the defense due to a tense traffic stop that involved racial tensions whereas in the Movie, early scenes hint at international United States betrayal and cybersecurity vulnerabilities.

62. In both the Screenplay and the Movie, the protagonists' friend, who they've had a long history with, appears to die to protect them. However, the friends are eventually shown to have survived as a surprise to the audience.

63. In both the Screenplay and the Movie, the protagonists' husbands exist solely to support the political ambitions of their wives. Both husbands are part of a relationship that inverts typical gender roles in a marriage in which the woman is the breadwinner and protector.

64. Both the Screenplay and the Movie feature the same themes; who gets to legislate and be in power in the future, does an inclusionary style of leadership edge out those who traditionally held power, and who inherits power and gets to wield it.

65. Further, both the Screenplay and Movie feature the theme of public versus private identities. Both protagonist grapple with feelings of inadequacy despite appearing powerful.

66. Notably, both the Screenplay and Movie address the subtheme of race and public appearance. They both are stories of black women operating in spaces designed to erase them, facing violence, betrayal, and systematic erasure and choosing to fight anyway.

67. Both the Screenplay and Movie are tense thrillers that feature a race against the clock. Both balance intense violence and chases with warm, relatable familial drama.

68. Both the Screenplay and Movie have an underlying tension and dread that result from the precariousness of the central characters, i.e. their gender and race and their overcompensation for these traits.

69. The similarities in the sequence of events and the overarching similarities in the characters, plot, and settings, if standing alone, may arguably constitute unprotected elements. However, when aggregated together, these elements belies any claim of "literary accident" and the particular sequence in which an author strings a significant number of even unprotectable elements, "can itself be a protectable element." *Carlini* at *11.

70. Upon information and belief, the Screenplay was copied without license or permission, thereby infringing on Plaintiff's copyrights (hereinafter the "*Infringement*")

71. The comparative analysis undertaken by Plaintiff further demonstrates the particularities apparent in both the Rose Script and Hallmark Movie and the progression of the same allege similarity in the "*particular* way in which the artistic elements form a coherent pattern, synthesis, or design." *Astor-White v. Strong*, 817 F. App'x 502, 503 (9th Cir. 2020).

## FIRST COUNT
### *(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)*

72. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

73. The Screenplay is an original, creative work in which Plaintiff owns a valid copyright.

74. The Screenplay is properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

75. Plaintiff has not granted Defendants a license or the right to use the Screenplay in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendant.

76. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendants improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed a work copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in her copyrights.

77. Defendants' reproduction of the Screenplay and display of the Screenplay constitutes willful copyright infringement.

78. Upon information and belief, Defendants willfully infringed upon Plaintiff's copyrighted Screenplay in violation of Title 17 of the U.S. Code, in that Defendants used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Screenplay without Plaintiff's consent or authority.

79. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to any an award of actual damages and disgorgement of all of Defendants' profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for the infringement pursuant to 17 U.S.C. § 504(c).

80. As a result of the Defendants' violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

81. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

## JURY DEMAND

82. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court enters a judgment finding that Defendants have infringed on Plaintiff's rights to the Screenplay in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

    a. finding that Defendants infringed Plaintiff's copyright interest in and to the Screenplay by copying and displaying it without a license or consent;

    b. for an award of actual damages and disgorgement of all of Defendants' profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendants for each infringement pursuant to 17 U.S.C. § 504(c), whichever is larger;

    c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendants from any infringing use of any of Plaintiff's works;

    d. for costs of litigation and reasonable attorney's fees against Defendants pursuant to 17 U.S.C. § 505;

    e. for pre-judgment interest as permitted by law; and

    f. for any other relief the Court deems just and proper.

1 | DATED: August 27, 2025

**SANDERS LAW GROUP**

By: __/s/ Craig Sanders__
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 132115

*Attorneys for Plaintiff*